And the case before us is Cindy M. Shaw v. St. John's Hospital et al. May it please the court. Your Honor, again, I am Tim Sansone on behalf of all the appellants in this matter. With me, as I said, is Jamie Bremmerkamp, also of my office. And also behind me, literally and figuratively, are quite a number of the defense attorneys representing the other defendants in the matter. Your Honors, we can all agree on one thing, and that is that with Jersey Hospital in this case, under Section 2-103, the case must be tried in Jersey County. This case was originally filed by Ms. Shaw against Jersey Hospital, her treaters, and many of the other defendants who were in the case. The case was later filed in St. Clair County and transferred to Madison County. And for quite some time, we had two cases going on, one in Jersey County against Jersey Hospital, another one in Madison County after it had been transferred from St. Clair County. Jersey Hospital is part of the story. That is where the treatment first began. In fact, not only did the treatment begin there with Ms. Shaw in October of 2006, but it continued for 14 more months. And so Jersey Hospital is an integral part of what happened to Ms. Shaw, and that is why it is in the case. Again, as I said, Jersey Hospital was originally sued by Ms. Shaw herself. With Section 2-103, we know that when you have a municipal corporation such as Jersey Hospital in the case, and when you have a cause of action that arises in that county where the municipal corporation is located, the cause of action must be tried in that county. And we all agree on that, including Ms. Shaw. The question comes in regarding whether the case should have immunity looked at now or look at the issue of severance now. Let's talk about immunity first. We don't have a complete record on the issue of immunity. We have some third-party complaints out there. We have some additional defendants who were given leave by Judge Matosian to file third-party complaints who haven't even done so yet because the case has stayed down there. We don't have any discovery on the issue of immunity. And we know under the Antonacci case, which we cite in our reply brief, that the appellate court is reluctant to step in on the issue of immunity when there's not a record to look at to make a determination. So the issue of immunity is really out the door at this point for purposes of the way the procedural posture stands under Rule 306, A2, and A4 as we sit here today. Let's talk about severance. The Supreme Court issued a supervisory order instructing this court to grant motions, excuse me, petitions for leave to appeal. There were two petitions, one filed by Passopant and all the other defendants, another one filed by Jersey Hospital. And the Supreme Court issued two orders, one covering each appeal. And I know that just recently in the last few days, this court has issued an order sua sponte, combining or consolidating two cases for purposes of decision. The issue of severance was not the issue that Jersey Hospital argued in its petition for leave to appeal. It was strictly the issue of transfer. Now, severance was mentioned as part of its petition, and it's mentioned in our petition as well. But under Rule 306, A2, and A4, only transfer is something that can be considered by the court. The court can't take the role of judgmentosian and begin looking at other issues such as immunity or severance or other things. The court does not have original jurisdiction. This is not a case in which there's been a final judgment, and the court is now taking a look at the entire case as a whole. It's a case involving limited jurisdiction under 306, A2, and A4. And the only question before this court is whether the cause of action should be transferred to Jersey County. And so the issue of severance is out the door. All we have to look at now is do we have a statute that is mandatory? The answer is yes. The Cook case, Chief Justice Miller tell us the answer is yes. Now, does Chief Justice Miller talk about the possibility of bad faith, about the possibility of a case in which someone could take advantage of the situation? Absolutely, he does. Is this that case? No. Now, if we had a situation where Pesterman and other defendants had brought in the Jersey County Sheriff's Department rather than Jersey Hospital, you might have that case. But we don't have that case here. We have a case in which we simply brought in one of the parties that plaintiff mistook herself sued originally in Madison County. Judge Matosian, who had the case on the first one as well, transferred that cause of action to Jersey County. He had the case a second time. He made a different decision. For whatever reason, he decided to keep the case in Madison County. And even plaintiff acknowledges that that was, quote, clear air, unquote. So we don't have a case involving bad faith. We don't have a case in which the court can look at the issue of immunity. We don't have a case in which the court has jurisdiction to delve into the issue of severance. That's an issue for Judge Matosian to consider, and he's already considered. And so therefore, Your Honors, when you boil it all down, what we have is a case in which we have a mandatory statute passed by our General Assembly that under the Cook decision, this court is required to acknowledge and apply. And to apply it, you would need to reverse Judge Matosian and transfer this cause of action to Jersey County. Fairly simple. Fairly easy to understand. Not as complex as Ms. Shaw would lead you to believe. Unless you have any questions, Your Honor, I think I've made the argument that I need to make today. I'd ask that you reverse Judge Matosian and have him order a transfer to Jersey County. I don't think we have any questions, and you'll have the opportunity for rebuttal if you stand so. Mr. Keith? May we please record? Yes. You have a magic door. You know that when you start to walk up the sidewalk, you should step in within 15 feet of the door down. That means you're still alive. At least you're still alive. Your Honor, I find myself, as I get older, I'll be 60 years old next week. If I get up in the morning and something doesn't hurt, I take my pulse to make sure that I'm still alive. I guess if you take all of these, if you are allowed to just take facts and say you don't get to consider this, and you don't get to consider this, and you don't get to consider this, and forget about this, but only look at this, oh, and on top of that, we're not going to send you a complete record, then I agree with the argument. It's really simple. It's just really easy. Let's just assume, for example, and I found one comment that you made, but I'd just like to talk about a few irregularities that I think came to mind that really caused me to believe that this entire appeal, in fact, everything that's going on in the trial court all the way up to this level, at best, smacks of some intellectual dishonesty, and I'm going to suggest to you the following reasons why I believe that and why I think that there's some things here that are beneath the surface, I guess, if you want to make a five-minute argument and you don't want to scratch the surface, is that you can make a very simple argument, but if you scratch the surface, you're going to find a couple of things which I think are kind of unusual. For example, I discovered last night, I discovered last night as I was preparing my case, is that in any form of nonconvenience case, and the court knows I've had enough of them, that it's elementary that one of the things the plaintiff does is file affidavits, affidavits which set forth the record as to why they believe that the venue is proper in the county in which they have selected. And, of course, I filed just that affidavit. I filed that affidavit in the circuit court of Madison County on February the 3rd, 2011, and then I filed a supplemental affidavit in the Madison County Circuit Court on March the 3rd, 2011. Those were things that were in front of Judge McCloskey when he was making this decision, because that's what we're here to talk about, is his decision and whether he abused his discretion in making that decision. For the strangest reason, and I'm going to ask, Lee, either or me, because I've never had this come up before, or I'll move to do it formally at the conclusion, that's not part of this record, and I just discovered that last night. And, of course, the record… Your affidavits are not part of the record? No, ma'am, they're not. They didn't put them in the record. I have no idea why they didn't put them in the record, but my two affidavits, along with mine, are not in this record. So, at this point, you're asking to supplement the record… Pursuant to Supreme Court Rule 3. We'll put those in, and we'll give the feathers an opportunity of a week if there's any… But do they explain why they didn't put them in the record? Well, if there's any objections, we'll put them in the record. Thank you. Thank you. But I made affidavits. I made affidavits that everybody makes. And in my affidavit, I set forth a number of facts which, of course, make this case languid, which make this case grainy. I mean, there's nothing complicated about this case except for how anecdotal it is. There's nothing complicated about it except for how, in my humble opinion, they have tried to play a little fast and loose with a number of facts, including the omission of filing my affidavits as part of this record. Affidavits which set forth the following propositions, which remain uncontradicted. My client is a resident of Madison County. Her husband is a resident of Madison County. She is 22 years old, and she's blind. And she lives in Madison County, and she has a child. She has a young baby, and she has caregiving responsibilities with respect to that child. In this case, she has a grandmother who lives in Madison County and an aunt who lives in Madison County. In addition to that, she has medical providers in Madison County. And they're briefed that those are medical providers that are providing her treatment in connection with the injuries and the consequences of negligence in this case to what depression and anxiety associated with her blindness at the age of 22 with a baby on board. Those people are all in Madison County, every single one of them. The author of the certificate of merit for which they claim is binding is a joke of the game with respect to Jersey County Hospital and tell you you don't have jurisdiction to hear a motion in this case. That guy is in St. Louis, right across the river. There is evidence spread all over the place in this case. And the reason they have to come in and make this ridiculous Cook argument or state it otherwise, take Langenhorst and stick Jersey Hospital on the end of a stick or hook on it is because they don't get straight up on the merits. They can't win a four-month hearing, of course, because it's just not there. Illini, which is one of the principal defendants in this case, they don't have one office in Madison County. They don't have two offices in Madison County. They have three offices in Madison County. In addition to that, if that's not enough, this case has been taking around for two-plus years while they take and they screw around and try to divest my client of her choice of form, a choice that she made because she lived there. And then they make these suggestions and these arguments in the brief that just absolutely drive me crazy because they are almost true, but they're not quite true. For example, they claim in this instance that you have no jurisdiction to hear the motion in the settlement. Well, I've got some news for you guys. You know where your jurisdiction comes from? The Supreme Court sent an order out in September of 2011 directing this court to hear the motion in the settlement. They suggest that you don't have any jurisdiction to listen to the motion to dismiss. Now, let me tell you something that I find just extraordinary. With respect to they say, oh, in general. I told you. I'm surprised. We just can't even believe that he didn't grant the motion in December. Folks, I was there. I was there when we made these arguments in open court the first time, and that was in March. And when I was there in March, the Jersey County Hospital was there. And I said to the Jersey County Hospital board, who I will suggest, and they're not here today, but I will suggest this is that if you look at the record, you're going to ask yourself what Jersey County Hospital and Pasadena are doing together. But I asked her. I said to her, ma'am, isn't it true that you have immunity from failure to diagnose? And she answers that question, yes. She said that in front of the court in front of the judge. She didn't file the motion to dismiss it. Why didn't she file a motion to dismiss it? I don't know. Maybe there's a reason that we don't quite understand. I've had work with Sanford families who have done it. I don't quite understand how they do things sometimes, but she doesn't file a motion to dismiss it. Even though she acknowledges on the record, well, of course I can't agree. This is a failure to diagnose case. That's all it is. That is all this case is. I then repeated the question to her. I said, every charging allegation against you is a failure to diagnose, and you're immune from those, right? The lawyer representing them in the hearing said, correct. Well, you would think if we're hearing the motion to transfer, and right after, because you never really explained it to the record, is to say you would think that if we were arguing that, if she agrees that she's entitled to a motion to dismiss, you'd think she would have filed it, but she didn't. And on top of that, they talk about severance? Listen to this. It says, quote, this is from Judge Matosian at the end of this hearing with respect to severance. Are you going to file a motion to sever? He said in this February hearing, I don't know if you are or not, but it seems like it should be allowed at the end. The court said, just file your motion to sever. Well, for better or for worse, Judge Matosian forgot. And then there was a hearing that occurred on March the 4th. And on March the 4th, we think we've gotten our ruling on our motion to transfer. It's done. We're fine, right? I mean, it's just now severing and setting away the Jersey County case so that this court will just disappear. The darndest thing happens. Look at this record. This record is the darndest thing I've ever seen. The lady who has been told that if she files a motion to sever, it will be granted, who has said, hey, I'm entitled to have my case dismissed because it is purely a failure to diagnose case, is that on that record, Judy Bramstrom goes there from Jersey Community Hospital. She doesn't file a motion to dismiss. She presents a motion to sever. She makes five lines of argument. She doesn't say a word to the judge about denying the motion to sever. All of these other defendants back here, led by Mr. Hunsaker, says is the judge, you can't sever this case. And then at that point, they're up here telling you, you don't have jurisdiction to consider the sentence. And on top of that, they want you to believe that you're not allowed to consider the motion to dismiss. If you take away enough pieces, I agree they can get there. But they have bastardized this record. They have bastardized the judicial process. And they have done it in a manner that I would have thought wouldn't be quite so transparent. Let me suggest this to you. This third-party complaint, they keep saying, we sued Jersey Hospital. Let me give you a little bit of background on this case. Because there are so many things that are so misleading in their arguments and their briefs that it just drives me crazy. The first thing is this. There are two parts to this case. October of 2006. And then in addition to that, the second part of the case is what I'm going to call the 2008 event. My client had severe headaches in 2006. She went to Jersey Hospital. Those headaches were severe and unrelenting. They, at that point, determined that they just did a lumbar puncture. Eventually, in her head, it's a baby. They never diagnosed her condition. These people have the audacity to say this isn't a failure to diagnose case because they've diagnosed her with headaches. I don't know what part of public medicine they haven't read, but headache is not a diagnosis. It's a symptom. What they didn't diagnose at that time was pseudotuberculosis. That was the failure to diagnose. Jersey Community Hospital is immune from that. But the emergency room doctors were not. The lawsuit which was filed by Bob Morrison, I didn't have a case at that point, he filed suit against the emergency room doctors. His only claim against Jersey Hospital was a parent agency. That was his only claim. And the law is clear that if you try to pursue a case and impute negligence to a partner, Jersey Hospital, who is immune from a failure to diagnose, which is all the claim was, you're wasting your time. So to suggest that we brought Jersey Hospital because in some fashion, why would I drop $5 million in coverage unless I thought, if I thought I had a cause of action against them? The claim is against the emergency room doctors. They are liable for failing to diagnose peplodema. That is the complaint. That is all the complaint is. And so then she, meaning the San Marcos Phoenix law firm, they then filed this third-party complaint against Jersey Hospital. They don't have, all they have alleged is that they failed to diagnose. The reason I know that is because all they did was copy my, Larson's complaint. And all they did was attach Larson's certificate of merit. They don't have a certificate of merit suggesting that this cause of action is anything other than what it is, a failure to diagnose. But they want to tell you, you don't get to hear the hearing on the motion to dismiss because they said that's not before you. But the reason it's not before you is because the lady doesn't file the motion to dismiss until after the case is gone from the trial court. I mean, it is so slick. But it is so transparent. They're going to say, you don't get to decide. And they're saying, now, it wouldn't be a fraudulent if we sued the sheriff of Jersey County as opposed to the hospital. What's the difference? Sue the sheriff. Your case against the sheriff has as much chance of succeeding as your case against the hospital. And think of the irony of this law firm who represents hospitals. And I'm actually reading in a brief that they're saying that I can sue a municipal hospital for failure to diagnose. I mean, it's like the world has gone upside down. It doesn't make any sense. The reality is, is that this is a straightforward, formalized case where there is evidence scattered across all manner of county. And there is a lot of evidence in Madison County, including my blind 22-year-old client, mother of a child, whose only caregivers are the women right there in Madison County, and whose treaters are there. And she has right to pick her form, particularly when one of the defendants has three, three offices in that county. And we're talking about adjoining counties. This is Langley Horse. This is Bridgeport versus Myers. This is Green. This is outrageous. And to suggest to the judges, you guys don't get to do this. We want you. We want you to reward us. We want you to reward us for not having the greatest affidavits as part of the record. We want you to reward us for having the lawyer who acknowledges in a hearing in March and February that she's got a great motion to dismiss at Jersey Hospital, but she just doesn't get around to filing it until April after the record is closed. We want you also to say you don't have any jurisdiction to hear the senator's argument. We want you to reward us because the lawyer who was told in the previous argument by Judge McCloskey, I'm going to sever your case, is sent there. It's just that he forgets he says that. They don't remind him of that. And then at that point, that lawyer makes a two-line argument, an unseparate argument, saying it shouldn't be severed. So then they say, you can't consider severing. You can't consider the motion dismissed. Game over. Let's take this blind girl and let's deprive her of her choice of family. That's all this is. I mean, that's all this is. And it is gamesmanship. And it's just gamesmanship, you know, of the worst order. And let's talk about something else, the third part of your point. I mean, seriously, the claim against anyone in Jersey County, the only claim, has always been a failure to diagnose two or three. They say in their briefing, well, it's not a failure to diagnose two or three headaches. I mean, that means I go to the emergency room and I say, oh, my God, my head hurts. Oh, I think we've got a headache. Why don't we go to the doctor? That's not a diagnosis. And the malpractice occurs because what happens is that then we get to 08. And that's when the case came to me. When we get to 08, the headaches came back. And they came back, and she went from one of these defendants to the other. But she didn't have any health insurance. And so she just basically got kicked down the road and went from one of these defendants to the other. Nobody did a test. Nobody made a diagnosis. Nobody did anything until it was too late and she was blind. And that was the case that Mr. Morrison didn't see. And that's why I found St. Clair County. I found St. Clair County, folks, because I had that case come in. I thought the 19th was my statute date. And the case came in on the 18th. And I was in Springfield, and we drafted a lawsuit and sued everyone who had laid hands on this lady from January 11th until the time her blindness was diagnosed. Not knowing because I hadn't talked to her when the statute was drafted. And I followed St. Clair County because I was two minutes away, and I could get a file stamp on it at 4.5. I didn't choose St. Clair County, but they would suggest that I did. Why would I choose St. Clair County? I've been working there a long time. I know that that was proper in Madison County. It was always proper in Madison County. And on top of that is that they want to play fast and loose with another part of the record. They said, I didn't ask the court to transfer the case to Madison County. I did, too. We asked them to because that's where we think lies. And they suggested the court transferred the case to Madison County on its own. The reason that's significant, of course, is because they couldn't appeal. That was probably when they should have filed an appeal because that was the order that they should be appealing. Now they want to rewind the clock, which is how and why they've played this game. I mean, it is just—hey, here's another one that's interesting. These are all the parties. Everyone here in pink—you represent one of these people in pink. I absolutely should, because at least you understand that under Supreme Court Rule 137, you're not allowed to sign a pleading that's not well done in law. In fact, none of these defendants have filed a third-party complaint against Tracy Hospital because everyone knows that that's the basis of the claim. And furthermore, who else other than doctors can make a diagnosis? No one. How can you charge a hospital? Nurses aren't liable for failure to make diagnoses. If we're going to change that law, then I'll go to Jersey County, and then my malpractice business will be a lot better because I can start charging nurses for failing to diagnose. They don't have a responsibility to diagnose. And those doctors were independent agents. The only claim against Jersey Hospital from the get-go was a parent agency. So for them to say, this isn't right, it sure would be right. It would be right if they hadn't gotten together and said, hey, hold off on that motion to dismiss it until April the 6th, because then there won't be an issue here, and then we'd be coming in with the right to put it. All I can say is, you know, is this guy, you're getting old, I'm getting cranky, and I am, but this thing, it's just got a bouquet about it that I think is inappropriate, and it's certainly not becoming. The law is so clear, and the law has become more and more clear as it relates to Fort Lauderdale. And, you know, it's not even like Madison County is the greatest place in the world to be with a runaway jury anymore. But it's more convenient for my client to be there, and it's more convenient for me to be there. They think I'm forum shopping. I'm talking to the solicitor where my client lives, and they do business, and they want to transfer to an adjoining county, and then we actually have some of these defendants who are claiming that it would be more convenient for them to go to Jerseyville when Madison County is closer. And there's that behavior to the perspective. Well, more convenient for me to go to Jerseyville, but I'm actually closer to Edwardsville. And that's true. That's part of the record. That's the other one of my affidavits that they didn't file, which is what I call the mileage affidavit. And the truth of the matter is that circuit courts are vested with considerable jurisdiction. This is the law that they know. This is the law that they know, which is why his argument was so short, because he doesn't want to make the argument that we all know to be true. And the argument is that circuit courts are vested with considerable discretion in deciding claims of foreign nonconvenience, and they will only be reversed if the defendant has shown that the court abused his discretion and with no reasonable person would agree with the ruling. With no reasonable person agree with the judgment of his ruling. Would no reasonable person think that at a minimum, it's just that the case against Jersey could be severed? Would no reasonable person think that the judge indicated he was going to sever it because this equals a motion? We're saying that file, we've got two lines of argument, and there's definite argument against it, and no one told him, hey judge, you said 30 days ago you were going to make the motion to sever. Would no reasonable person think that arguing a motion to dismiss is if you are representing Jersey Hospital and you have acknowledged on the record, which is a record, that yes, I get to win, this is a fair diagnosis, that you would have filed that motion before we head to the appellate court? We didn't file a brief in opposition to what Jersey County had, because we agreed, they need to go to Jersey County, and I'll bet you $600 billion, billion, trillion, that as soon as that case gets to Jersey County, it's going to be dismissed under the immunity statute of failure to diagnose, and this is again a concern that you have. They have created an effort, a transparent effort, to take my client's client and tell her where she's got to bring her lawsuit and bastardize all of the law that's been made, including by this court, for non-convenience, it shouldn't be rewarded, it shouldn't be done. So it's a level playing field. Thank you. Thank you. Thank you. Your Honors, Ms. Shaw hasn't said anything that changes the argument and the result that should happen in this case based on what I said earlier. Again, immunity is not before the court. The issue is not right. The record's not complete. Not even all of the third-party complaints have been filed yet, and this court doesn't stand in the shoes of Judge Matosian on that issue. When it comes to immunity, our Supreme Court has made it clear, even if you were to look at the issue, which is not right, that there is no absolute rule against holding municipal corporations responsible for medical negligence. The Michigan Avenue National Bank case, which we cite in our reply brief, specifically notes that there is no absolute rule, there is no complete bar to allowing negligence claims to be brought against municipal corporations or their employees or agents. And so this idea that it's an automatic, that upon going to Jersey County, the case will be dismissed against Jersey Hospital, doesn't hold up under the law as pronounced by our Supreme Court. When it comes to the question of the record and what's in there and what's not in there, first of all, Ms. Shaw had the opportunity to add things to the record if she wanted to. She did file a supporting record but did not include the things that were discussed today. The Supreme Court, when it issued a supervisory order, could have ordered that additional record be prepared. It did not. And so the choice of what is in the record or what is not in the record, that's a joint choice. That's a choice made by the parties on appeal. And for whatever reason, when the supporting record was filed by Ms. Shaw, that information wasn't included. When it comes to the Langenhorst case, the Langenhorst case is what you have when there's only a form non-convened situation and no mandatory venue statute, as we have here. And even if this were only an FNC case, which it's not, Langenhorst is not on point because there you had interstate witnesses. You had witnesses over in Indiana and you didn't have a situation like we have here. What this case is more like is the Bruce case, which we cite in our reply brief. The Bruce case involved doctors, not a railroad, as in Langenhorst. And the Bruce case, the court there was clear to say, when you have doctors involved, when you have medical providers involved, you have to take that into account. But again, that's all outside of the situation we have here, where you have a mandatory venue statute, where Jersey Hospital is in the case. They were sued originally by Ms. Shaw. And it doesn't matter who the attorney was. For whatever reason, it was filed against Jersey Hospital, the reason being, of course, that that's where the story starts. That's where Ms. Shaw first was treated. That's where she was treated for 14 months. And that's where a number of defendants worked or provided the treatment. As far as the issue of why wasn't a motion dismissed, filed, or why wasn't this, why wasn't that, well, two days after the decision was made on severance, the court, Judge Matosian, stayed the case. There was no opportunity to file any kind of such motion. As we pointed out in our reply brief, when the opportunity arises to take up the issue of immunity, to take up any of the other issues that the circuit court has original jurisdiction to consider, the defense will vehemently support the position that they want to take. The case is stayed right now. It was stayed two days after that order was entered. There's simply no place for us to be filing things in the circuit court at this time, for anyone, Jersey Hospital or anyone else. Something else to keep in mind on that immunity issue, Your Honor, is we're not bound by the plea. That's another point that's made in the Antonacci case and some of the other cases we cite as part of our reply brief. There is the opportunity for amendments to be made, and as I said before, not even all of these third-party complaints have been filed yet. So when you back up for a moment, you take a look at the case, you have that venue statute, you have the circumstances as they are, what you end up with, again, as I said in my initial presentation, is a simple case. And we ask that you reverse Judge Matossian and order that he transfer the cause of action to Jersey County, where under Section 2-103 it must be heard. Thank you, Your Honor. Thank you. Thank you, Mr. Sandstone. Thank you, all the remaining unspoken representatives of your clients. Thank you. Thank you, Your Honor.